IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:22-CV-38-BO

LARISSA YORK,
        Plaintiff,

v.

MATTHEW LUTZ, SUSAN MIZELLE,
and CURRITUCK COUNTY SCHOOLS,
        Defendants.

O R D E R

This cause comes before the Court on defendants' motion to dismiss plaintiff's amended complaint. Plaintiff has responded, defendants have replied, and the motion is ripe for ruling. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff was formerly employed as the Chief Financial Officer for defendant Currituck County Schools. Plaintiff's employment was terminated by defendant Lutz, the Superintendent for Currituck County Schools, on July 15, 2021. Defendant Mizelle took over the Chief Financial Officer position following plaintiff's termination.

Plaintiff alleges that in late February 2021 she was scheduled to meet with Lutz. At the outset of the meeting, which was held not in Lutz's office but in a vacant office next door, Lutz locked the office door, grabbed plaintiff's buttocks with both hands, and touched plaintiff's neck and head with his face. Plaintiff rebuffed Lutz's conduct and eventually was able to leave the office. Over the next months, plaintiff alleges that Lutz would repeatedly tell her that she knew what he expected and that things would be fine if she would do what he wanted. Plaintiff alleges

that Lutz told plaintiff about a relationship he had had with an assistant principal whom he supervised while a principal and whose career he had helped advance; plaintiff understood Lutz to be informing her that if she agreed to have an affair with him Lutz would help her career, while if she refused he would not. Plaintiff alleges that she avoided meeting with Lutz alone or at unusual times or places and that, when rejected, Lutz would unfairly criticize plaintiff or her work. Plaintiff further alleges that Lutz would create opportunities for physical contact with plaintiff by, for example, blocking a doorway so that plaintiff has to push past him. Plaintiff alleges that her refusal of Lutz's sexual advances ultimately resulted in her termination.

On October 12, 2021, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that she was discriminated against and sexually harassed by Lutz on the basis of her sex (female), that she was subjected to intimidation and retaliation by her supervisors, and that she was terminated from her employment. [DE 14-1]. On August 5, 2022, plaintiff received her notice of right to sue from the EEOC. [DE 2 ¶ 5].

Plaintiff instituted this action by filing a complaint in this Court on September 19, 2022. Plaintiff filed an amended complaint the following day. In her amended complaint, plaintiff alleges claims for sexual harassment by defendant Lutz in violation of Title VII of the Civil Rights Act of 1964, wrongful discharge in violation of North Carolina public policy by defendant Currituck County Schools, intentional infliction of emotional distress by defendants, tortious interference with contractual relationship by defendants Mizelle and Lutz, and tortious interference with prospective economic advantage by defendants Mizelle and Lutz.

Defendants have moved to dismiss plaintiff's amended complaint. They contend that plaintiff has failed to state a claim for hostile work environment under Title VII, that plaintiff's October 12, 2021, EEOC charge was untimely and this Court thus lacks subject matter jurisdiction

2

over plaintiff's hostile work environment claim, and that the Court lacks subject matter jurisdiction over a Title VII *qui pro quo* claim as plaintiff failed to exhaust her administrative remedy. Defendants further argue that plaintiff's state law claims against Currituck County Schools and Lutz in his official capacity are barred by governmental immunity, and that plaintiff fails to state a tortious interference claim or a claim for intentional infliction of emotional distress.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable

3

conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted).

*A. Title VII claim*

At the outset, the Court notes that plaintiff makes clear in her response to the instant motion that she has not alleged, as defendants contend, a hostile work environment claim. Accordingly, the Court considers only a *quid pro quo* sexual harassment claim under Title VII. Defendants argue first that the Court lacks subject matter jurisdiction over plaintiff's sexual harassment claim because it its outside the scope of plaintiff's EEOC charge.

Administrative charges "frame[] the scope of future litigation." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

Plaintiff's claim for *quid pro quo* sexual harassment falls within the scope of her EEOC charge and is not procedurally barred. Plaintiff does not include an allegation in her EEOC charge that she was subjected to a hostile work environment, but rather details the alleged harassment by Lutz, his alleged unwelcome comments and intimidation, Lutz's alleged criticism and intimidating threats which followed plaintiff's rejection of his advances, and her ultimate termination. Although plaintiff does not identify her claim as one for *quid pro quo* sexual harassment or cite an express statement by Lutz that her continued employment was conditioned on her response to his sexual advances, the Court finds that a claim for *quid pro quo* sexual harassment would naturally have arisen from the investigation of the facts included in plaintiff's EEOC charge.

Defendants next argue that plaintiff has failed to state a claim for *quid pro quo* sexual harassment.

4

"Sexual harassment, like other forms of gender discrimination, can take many forms, but [courts have recognized] two basic varieties: harassment that creates an offensive environment ('condition of work') and harassment in which a supervisor demands sexual consideration in exchange for job benefits ('*quid pro quo*')." *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983) (internal quotation and citation omitted). To demonstrate a prima facie case of *quid pro quo* sexual harassment, a plaintiff must prove (1) that she belongs to a protected class, (2) that she was subjected to unwelcome sexual harassment, (3) that the harassment was based on sex, (4) that her reaction to the harassment impacted tangible aspects of her employment, such as the "compensation, terms, conditions, or privileges of employment", and (5) that her employer knew or should have known about the harassment and failed to take appropriate action; if the harasser is a supervisor, this element is satisfied. *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011). Under element four, the "acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. . . . [and] the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision." *Id.* Where a plaintiff satisfies her prima facie showing, the employer must come forward with a non-discriminatory basis for the adverse employment action and the plaintiff must show that the proffered non-discriminatory reasons are pretext. *Id.* at 222-23.

Plaintiff's claim for *quid pro quo* sexual harassment has been plausibly alleged. First, defendants contend that there is no allegation that Lutz communicated to plaintiff that her acceptance of sexual harassment or advances was required, but such communication may be express or implied, and plaintiff has sufficiently alleged that Lutz impliedly conditioned her continued employment or the furtherance of her career on accepting his advances. Defendants also

5

contend plaintiff has not alleged a tangible employment action. Again, the Court disagrees. Termination from employment is plainly a tangible employment action. Where, as here, there is no allegation of an express demand for sexual consideration, a plaintiff must plausibly allege a causal connection between her rejection of sexual advances and the impact to a tangible aspect of her employment. *See Wilson v. UNC Health Care Sys.*, No. 1:19CV1169, 2020 WL 5764368, at *6 (M.D.N.C. Sept. 28, 2020). Again, taking the allegations in the complaint as true, plaintiff has plausibly alleged that her continued refusal of sexual advances by Lutz caused him to, without other justification, criticize her work which led ultimately to her termination.

The motion to dismiss plaintiff's Title VII claim is therefore denied.

*B. State law claims*

(1) Governmental immunity

Defendants assert governmental immunity for the state law claims against Currituck County Schools and Lutz in his official capacity. Plaintiff has clarified in her response that the state law claims are alleged against Lutz in his individual, not official capacity.

"[A] county board of education[1] is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority." *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 183 N.C. App. 146, 148, 645 S.E.2d 91, 92 (2007). A county board of education can waive its governmental immunity

---

[1] Plaintiff has named Currituck County Schools as defendant, not the Currituck County Board of Education, which is authorized to "prosecute and defend suits for or against the corporation." N.C. Gen. Stat. § 115C-40; *see also* N.C. Gen. Stat. § 115C-36 ("All powers and duties conferred and imposed by law respecting public schools, which are not expressly conferred and imposed upon some other official, are conferred and imposed upon local boards of education."). The Court finds that the Currituck County Board of Education is the proper defendant in this action. *I.M. v. Granville Cty. Sch.*, No. 5:22-CV-7-FL, 2022 U.S. Dist. LEXIS 146572, at *17 (E.D.N.C. Aug. 16, 2022).

6

through the purchase of liability insurance if it does so expressly. N.C. Gen. Stat. § 115C-42. The failure to allege waiver of governmental immunity for tort claims such as those raised by plaintiff typically results in dismissal of those claims. *See Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 418 (2002) ("This Court has consistently disallowed claims based on tort against governmental entities when the complaint failed to allege a waiver of immunity."). In response, plaintiff seeks leave to amend her complaint in order to affirmatively allege a waiver of immunity. In light of the directive that leave to amend be freely given, Fed. R. Civ. P. 15(a), and the limited nature of the requested amendment, plaintiff's request is ALLOWED. Plaintiff shall further name as the proper party-defendant the Currituck County Board of Education.

(2) Tortious interference

To succeed on a claim for tortious interference with contract, a plaintiff must demonstrate:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Beck v. City of Durham*, 154 N.C. App. 221, 232 (2002). To succeed on a claim for tortious interference with prospective economic advantage, a plaintiff must show that

a party interferes with a business relationship by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, ... if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.

*Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701 (2016) (quotation and citation omitted); *see also Benjamin v. Sparks*, 173 F. Supp. 3d 272, 288 (E.D.N.C. 2016) (elements of claim are "(1) a prospective contract with a third party existed, (2) the tortfeasor 'maliciously induced' the third party 'not to enter a contract which he would have

7

entered into but for the interference,' and (3) the interference proximately caused damages.") (cleaned up).

Plaintiff alleges that Mizelle and Lutz interfered with her contract with Currituck County Schools. Plaintiff also alleges that she had an ongoing business relationship with Currituck County Schools which she expected to continue for many years.

Under North Carolina law, a school superintendent is a party to the employment contract between the school board and a school employee, and thus plaintiff has failed to allege the existence of a contract between plaintiff and a third person with which Lutz interfered. *Wagoner v. Elkin City Sch.'s Bd. of Educ.*, 113 N.C. App. 579, 587 (1994) ("plaintiff cannot maintain an action against the Board or Lassiter for malicious interference of contract because the Board and Lassiter, as superintendent of the Board, are parties to the contract."). The fact that Lutz was a party to plaintiff's contract also defeats her prospective economic advantage claim against Lutz arising out of her expected continued employment with Currituck County Schools. *See Cobra Cap., LLC v. RF Nitro Commc'ns, Inc.*, 266 F. Supp. 2d 432, 440 n.3 (M.D.N.C. 2003) (tortious interference with prospective economic advantage claim dismissed "as this claim requires a *third party* to interfere with the prospective economic advantage, and not an entity [that is] a party to the proposed contract."); *see also Waters v. Collins & Aikman Prod. Co.*, 208 F. Supp. 2d 593, 596 (W.D.N.C. 2002) (noting further that where a party to a contract interferes with a contract, the action is one for breach, "and there simply is no need to supplant, supplement, or duplicate that cause of action.").

Plaintiff has also alleged tortious interference claims against defendant Mizelle, the Assistant Financial Officer while plaintiff served as Chief Financial Officer who became Chief Financial Officer after plaintiff's termination. These claims are based on plaintiff's allegations that

8

Mizelle lied and unfairly disparaged the quality of plaintiff's work and falsely accused plaintiff of improper conduct. Mizelle allegedly sought favorable treatment from Lutz and wanted plaintiff's position as Chief Financial Officer.

The parties appear to agree that Mizelle was a non-outsider to plaintiff's contract, which means that she "ha[d] an interest in the subject matter of the contract, [and] enjoys a qualified immunity for actions taken in furtherance of that interest." *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 24 F. Supp. 2d 515, 520 (M.D.N.C. 1998). Additionally, in order to establish that any interference was without justification, as is required of both types of tortious interference claims, the "plaintiff's complaint must admit of no motive for interference other than malice." *Beck v. City of Durham*, 154 N.C. App. 221, 232 (2002) (internal quotation and citation omitted).

Plaintiff's complaint alleges that Mizelle acted with malice and with a bad motive. Whether plaintiff can establish that Mizelle's qualified immunity can be overcome remains to be determined. Additionally, although plaintiff alleges that she expected her contract with the school board to continue for a period of years, "a plaintiff's mere expectation of a continuing business relationship is insufficient to establish" a tortious interference with prospective economic advantage claim; "[i]nstead, a plaintiff must produce evidence that a contract would have resulted but for a defendant's malicious intervention." *Beverage Sys. of the Carolinas*, 368 N.C. at 701. Because, at this stage, the allegations in the complaint are taken as true, the Court will permit plaintiff's tortious interference claims against Mizelle to proceed.[2]

(3) Emotional distress

---

[2] Insofar as plaintiff has alleged interference with a prospective contract with a different employer, plaintiff has raised only a conclusory allegation which is insufficient to state a claim against either Lutz or Mizelle. *See, e.g., Benjamin*, 173 F. Supp. 3d at 289 (allegations insufficient to "reasonably create an expectation" that a third party would enter into a contract with plaintiff).

9

To prevail on a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct; (2) which is intended to cause and does cause (3) severe emotional distress to another." *May v. City of Durham*, 136 N.C. App. 578, 586 (2000). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354 (2004). Severe emotional distress is "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990). North Carolina courts have generally been reluctant to find intentional infliction of emotional distress in the employment context. *Howard v. Coll. of the Albemarle*, 262 F. Supp. 3d 322, 340 (E.D.N.C. 2017); *Buser v. S. Food Serv., Inc.*, 73 F. Supp. 2d 556, 573 (M.D.N.C. 1999).

Plaintiff alleges that all defendants engaged in extreme and outrageous conduct directed at plaintiff which was intended to cause severe emotional distress to plaintiff. This claim is based on Mizelle's allegedly false reports of plaintiff's incompetency at her job so that plaintiff would be fired. Such conduct does not rise to the level of extreme or outrageous. *See Patel v. Scotland Mem'l Hosp.*, No. 3:94CV00284, 1995 WL 319213, at *9 (M.D.N.C. Mar. 31, 1995) (spreading falsehoods about professional performance not sufficiently extreme or outrageous). The IIED claim against Mizelle fails.

The Court will not dismiss the IIED claim against Lutz. Defendants argue only that plaintiff has not alleged extreme or outrageous conduct. North Carolina courts have, however, found that sexual touching, advances, and remarks have risen to the level of extreme and outrageous conduct.

10

*Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 684 (E.D.N.C. 2013) (listing cases); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 495 (1986). Plaintiff's allegations concerning Lutz's conduct, taken as true, are sufficient to state a plausible claim at this stage.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss [DE 13] is GRANTED IN PART and DENIED IN PART. Plaintiff's tortious interference claims against defendant Lutz are DISMISSED. Plaintiff's intentional infliction of emotional distress claim against Mizelle is also DISMISSED.

Plaintiff shall file an amended complaint in accordance with the foregoing within fourteen (14) days of the date of entry of this order.

SO ORDERED, this 17 day of April 2023.

*/s/ Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE