IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:22-CV-38-BO-BM

| | | |
|---|---|---|
| LARISSA YORK,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW LUTZ, SUSAN MIZELLE, and CURRITUCK COUNTY BOARD OF EDUCATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This cause comes before the Court on defendant Mizelle's motion for summary judgment. Plaintiff has responded, defendant has replied, and the motion is ripe for ruling. For the following reasons, the motion is granted.

## BACKGROUND

Plaintiff was fired from her position as the chief financial officer for defendant Currituck County Schools by defendant Lutz, the superintendent. She alleges Lutz groped her at work in February 2021. In the months after she rebuffed that initial unsolicited advance, she alleges, Lutz continued to harass her by seeking physical contact and insinuating that he would use his professional influence to reward her for commencing a sexual relationship with him or punish her for resisting. In July 2021, he terminated her employment. She alleges it was retribution and not based on her performance at work. Defendant Lutz denies sexually assaulting and harassing plaintiff and purports lawful reasons for terminating her based on her performance.

Defendant Mizelle was, at that time, the assistant financial officer. After plaintiff was fired, Mizelle took over her job as CFO. Prior to plaintiff's termination, Mizelle met with Lutz and

discussed plaintiff's performance. This conversation, and related communications between them about plaintiff, forms the basis of both remaining claims against Mizelle: tortious interference with an existing contract, and tortious interference with a prospective economic advantage. Mizelle now moves for summary judgment on both.

Although plaintiff disputes the accuracy of Mizelle's statements to Lutz in that meeting, the relevant statements themselves are mostly undisputed. Mizelle told Lutz she believed the finance department would "implode" under plaintiff's leadership. [DE 58-7, p. 69-70]; [DE 58-5, p. 67]. She cited plaintiff's practice of "moving money around frequently" as a concern [DE 58-7, p. 31], and that plaintiff would move money around without director approval [DE 58-5, p. 66]. Mizelle said that plaintiff worked insufficient hours, that "she was hard pressed to work an eight-hour day." [DE 58-7, p. 45-46]. Later, Mizelle construed the fact that plaintiff discovered a one-million-dollar surplus late in the fiscal year as "unacceptable." [DE 58-7, p. 55]. Plaintiff alleges these statements, which she calls gross lies, led to her termination and Mizelle therefore tortiously interfered with her existing employment contract and with her expectation of continued employment.

The justifications Lutz purports for terminating plaintiff are more specific than the complaints Mizelle submitted to him. Lutz said that plaintiff's discovery of a one-million-dollar surplus late in the fiscal year caused him to fire her. [DE 58-5, p. 72]. He also noted that her inappropriate movement of money caused funds to revert to the state. [DE 58-5, p. 51–53]. He says plaintiff's admission to the board that she did not understand how lottery funds were used evinced her unpreparedness. [DE 58-5, p. 32]. She failed to schedule monthly directors meetings as he claims he instructed her to do, although she denied being told to schedule meetings. [DE 58-5, p. 39, 114–115]. In Lutz' view, plaintiff attempted to place a school bookkeeper on something

resembling an action plan, even though the bookkeeper does not answer to the CFO and plaintiff was not in charge of disciplinary action toward her. [DE 58-5, p. 115–17].

ANALYSIS

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing . . . that there is an absence of evidence to support the nonmoving party's case.'" Anderson v. Diamondback Inv. Grp., LLC, 117 F.4th 165 (4th Cir. 2024) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

The prima facie case for a claim of tortious interference with contract has five elements: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Schwarz v. St. Jude Med., Inc.*, 270 N.C. App. 720, 729–30 (2020) (quoting *Brodkin v. Novant Health, Inc.*, 264 N.C. App. 6, 13–14 (2019)). Tortious interference with a prospective economic advantage has the same elements except "instead of an existing contract, there must be a contract that would have been entered into but for the defendant's conduct." *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 431 (E.D.N.C. 2015).

Summary judgment for Mizelle in this case is appropriate if the nonmovant plaintiff fails to provide evidence which would allow a reasonable jury to find Mizelle intentionally induced her termination. Intentional inducement requires both that the defendant intended to cause the termination, and that the plaintiff was fired "because of" the defendant's conduct. See *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 745, 641 S.E.2d 695, 697 (2007); *Hines v. Yates*, 171 N.C. App. 150, 159, 614 S.E.2d 385, 391 (2005).

**I. Intentional Inducement: Causation**

Defendant Mizelle satisfied her initial burden of demonstrating the absence of any genuine dispute of material fact. [DE 43, 44, 45]. Plaintiff's responsive filings [DE 50, 51] fail to raise material facts in dispute. Plaintiff alleges that Mizelle's statements to Lutz were gross lies designed to induce Lutz to fire Plaintiff, and that Lutz indeed fired plaintiff "because of" the statements Mizelle made. In Mizelle's motion for summary judgment, she cites *Hines*, 171 N.C. App 150, for the proposition that even if Mizelle made derogatory and untrue statements to Lutz with the design

of causing plaintiff's termination, she has not "intentionally induced" the termination unless Lutz fired plaintiff "because of" Mizelle's statements.

Plaintiff's responsive filings attempt to distinguish *Hines* based on its dissimilar facts: *Hines* did not involve gross misrepresentations or a motive to replace the terminated plaintiff. [DE 50, p. 11-12]. However, those distinctions would weaken an argument based on the causation prong of the "intentionally induced" analysis, not the intent prong. Asking whether Mizelle told gross lies and wanted to take plaintiff's job probes her *intent* to cause the termination, but an inquiry into Mizelle's objectives alone sheds no light on whether Lutz fired plaintiff "because of" Mizelle's statements.

Similarly, Mizelle cites *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 641 S.E.2d 695 (2007) for the proposition that even if Lutz fired plaintiff, *in part*, "because of" Mizelle's statements, Mizelle would still be entitled to summary judgment. [DE 44, p. 9] Plaintiff's response, again, distinguished *Esposito* on grounds unrelated to the issue of causation. [DE 50, p. 11].

The principles for which Mizelle cites *Hines* and *Esposito* apply here. If Lutz did not fire plaintiff "because of" Mizelle's statements, her tortious interference claims fail. Many of the justifications Lutz purported for firing plaintiff regarded conduct that he personally observed or which he discovered without Mizelle's assistance. For instance, he was present when she admitted in a board meeting that she did not know how lottery funds work, which he felt betrayed her unpreparedness. [DE 58-5, p. 32, 107–108]. Lutz believed plaintiff had failed to schedule monthly directors meetings as he claims he instructed. [DE 58-5, p. 39, 114–115]. Other directors, in addition to assistant director Mizelle came to him with their concerns that, among other things, her inappropriate movement of money caused funds to revert to the state. [DE 58-5, p. 51–53].

Additionally, if it is true, as plaintiff alleges, that Lutz terminated her in retribution for rebuffing his sexual advances, Mizelle's statements could have induced plaintiff's termination only in part.

Whether or not Lutz was right to interpret these incidents as justifying plaintiff's termination, and whether or not he uses them as a pretext for his true motives, plaintiff's termination cannot be fairly traced to Mizelle's statements.

**II. Justification: Qualified Immunity Based on Legitimate Business Interest**

The fourth element of a tortious interference claim is that the defendant acted without justification. *Schwarz*, 270 N.C. App. at 729–30. "In order to demonstrate the element of acting without justification, the action must indicate 'no motive for interference other than malice.'" *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523 (2003) (quoting *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674 (2001)). A tortious interference claim "based on an employment contract [ ] brought against the plaintiff's co-employees," requires a showing that "the alleged interference was unrelated to a 'legitimate business interest' of the employee." *Schwarz*, 270 N.C. App. at 730, 842 S.E.2d at 127 (quoting *Brodkin*, 264 N.C. App. at 14, 824 S.E.2d at 874). Otherwise, even if the interfering co-employee was partially motivated by malice, she is still entitled to qualified immunity as long she was partially motivated by a legitimate business interest. *See Area Landscaping*, 160 N.C. App. at 524.

Mizelle, in her position as assistant financial officer, had a legitimate business interest in discussing the chief financial officer's shortcomings. The fact that Mizelle was poised to gain from plaintiff's termination does not eliminate the legitimate business interest an employee has in voicing concerns about work. Plaintiff relies on the theory that Mizelle's statements to Lutz were gross and extreme fabrications, and that there is no legitimate business interest in lying about your co-employee to take her job.

The flaw in plaintiff's argument is that none of the relevant statements can be properly construed as gross lies. Everything in her statements is either opinion, reasonably inferred based on Mizelle's perception, or uncontested fact. It appears Mizelle genuinely believed that the finance office would implode under plaintiff's leadership. [DE 58-7, p. 69–70]; [DE 58-5, p. 67]. The fact that plaintiff discovered a one-million-dollar surplus late in the fiscal year is uncontested; whether it is "unacceptable" is Mizelle's opinion. [DE 58-7, p. 55]. Mizelle's allegation that plaintiff worked insufficient hours, even if unfair considering plaintiff's duties outside the office, was based on Mizelle's perception of plaintiff's time spent in the workplace. [DE 58-7, p. 45–46]. That other directors approached Lutz with concern about plaintiff's frequent movement of funds corroborates Mizelle's complaint to Lutz of the same. [DE 58-7, p. 31]; [DE 58-5, p. 51–53]. Of course, there is a legitimate business interest in expressing one's opinion about the leadership and work product of another in the workplace. *See, e.g., Hubbard v. N. Carolina State Univ.*, 248 N.C. App. 496, 507 (2016). Therefore, Mizelle's statements are justified.

Because the failure of plaintiff's prima facie case on her tortious interference claims renders all other issues immaterial, there is no genuine dispute of material fact, and defendant is entitled to a judgment as a matter of law. Summary judgment for defendant Mizelle is appropriate.

CONCLUSION

Defendant Mizelle's motion for summary judgment [DE 43] is GRANTED. The motions to extend time [DE 48, 49] are GRANTED and the response memoranda were considered. The following of plaintiff's claims remain unresolved: (1) the Title VII claim asserted against both defendants Lutz and Currituck County Board of Education, and (2) the intentional infliction of emotional distress claim against defendant Lutz. Neither these defendants nor plaintiff have filed

further dispositive motions, and as the above claims remain for trial, this case is therefore REFERRED to United States Magistrate Judge Brian S. Meyers to schedule a pre-trial conference.

SO ORDERED, this 24 day of September 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE